UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN D. TAYLOR,

    Plaintiff,

v.

                              Case No. 05-CV-73418-DT

JACKIE CURRIE et al.,

    Defendants.
                                     /

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REMANDING CASE
FOR LACK OF SUBJECT MATTER JURISDICTION**

This case was removed from Wayne County Circuit Court by Defendants Jackie Currie and Detroit Elections Commission. Pending before the court is a motion to remand, filed by Plaintiff Maureen D. Taylor on September 6, 2005. The matter has been fully briefed, and the court conducted a hearing on September 13, 2005.

Federal statutes permitting cases to be removed under certain circumstances are traditionally construed such that any doubt in a particular case is to be resolved against removal. Divesting a state court of power to hear claims involving important state matters raises significant federalism concerns and can upset the proper relationship between the state and federal governments. A defendant cannot simply invent an issue of federal law to support removal to federal court; proper justification must be found in an authorizing statute. Here, Defendants allege, but provide nothing to support, a clash of duties between the standards required under federal law and the obligations required

of them under Michigan law and a preliminary injunction entered on September 1, 2005. The case will be remanded.

## I.  BACKGROUND

Plaintiff Maureen Taylor initiated this action on August 18, 2005, in Wayne County Circuit Court.  Plaintiff's complaint alleges various defects in the August 2, 2005 primary election for Detroit City Council.[1]  Plaintiff seeks "Mandamus" and injunctive relief which would, among other things, order Defendants Jackie Currie and Detroit Elections Commission to: (1) show cause why they should not purge their rolls of all absentee voters whose applications were returned as undeliverable in the August 2 primary and all other persons they know not to be qualified to vote as electors in the City of Detroit before the mailing of absentee voter applications for the November 2005 general election; (2) purge their rolls by conducting a canvas pursuant to MCL 168.515; (3) preserve and maintain all records related to the August 2 primary.  (*See* Compl. at ¶¶ 64-68.)  In her complaint, Plaintiff indicated that she was not asserting any federal claims and, instead, specifically reserved the right to pursue any federal claims in a federal forum, pursuant to *England v. Louisiana Bd. of Med. Examiners*, 375 U.S. 411 (1964).  (Compl. at ¶ 51.)

After filing her complaint, Plaintiff also filed a motion for a temporary restraining order and for a preliminary injunction to prevent Defendants from mailing unsolicited applications for absentee ballots for the November election.  On Tuesday, August 29,

---

[1] The results of the primary placed Plaintiff at twenty-third.  Only the top eighteen candidates will be placed on the November ballot.  (Compl. at ¶ 34.)  Plaintiff was 4,347 votes short of being number eighteen.  (*Id.*)

2005, Chief Judge Mary Beth Kelly of the Wayne County Circuit Court granted the motion for temporary restraining order, and on Thursday, September 1, 2005, Judge Kelly orally granted the motion for preliminary injunction. Specifically, in a thorough and well-reasoned opinion, Judge Kelly ruled from the bench that Plaintiff was likely to succeed on the merits of her claim that Defendants' actions in mailing out unsolicited absentee ballot applications violated MCL 168.759. (*See* 9/2/05 Tr. at 7-8, 11-12.) After considering the other relevant factors for preliminary injunction, Judge Kelly enjoined "the City of Detroit from using a bulk mailing and from allowing the unsolicited mailing of absentee voter ballot applications in the general election." (*See* 9/2/05 Tr. at 12, attached to Pl.'s Br. In Opp. to Mot. to Dismiss). Judge Kelly ordered the parties to submit a written order agreed upon as to form no later than 2:00 p.m. on the Tuesday following Labor Day, September 6, 2005. (*Id.* at 13.)

On September 2, 2005, Defendants Jackie Currie and Detroit Elections Commission removed the case to this court from Wayne County Circuit Court.[2] The purported basis for subject matter jurisdiction was federal question jurisdiction under the 14th Amendment of the United States Constitution and the Voting Rights Act of 1965 (42 U.S.C. § 1973). (Notice of Removal at ¶ 5.) According to Plaintiff, on September 2 Defendants also mailed out mass absentee voter applications in direct contravention of Judge Kelly's order.[3]

---

[2]As noted in the court's September 14, 2005 "Order to Show Cause," there is some doubt as to whether Defendant Detroit Elections Commission actually consented to the removal of this case under 28 U.S.C. § 1441.

[3] Defendants do not appear to dispute this allegation. Indeed, beginning at the court's September 8, 2005, status conference, this issue has been broached more than

On September 6, 2005, Defendants filed a 12(b)(6) motion to dismiss, arguing that Defendants do not have the power to do the majority of what Plaintiff seeks (including her general attempt to be placed on the November ballot).  Defendants also argue that it would violate federal law to provide part of the relief Plaintiff seeks (i.e., to not send out the unsolicited applications for absentee ballots).  Defendants argue that not mailing the absentee ballot applications would violate the Voting Rights Act, 42 U.S.C. § 1971, because it would place a restriction only on the City of Detroit, which is predominately African-American.  Defendants further argue that not mailing the applications would violate the Voting Accessibility for the Elderly and Handicapped Act, 42 U.S.C. § 1973ee.  (Def.'s Mot. Br. at 5-7.)   Plaintiff filed her response to this motion on September 7, 2005, in which she argued that Defendant's removal and motion to dismiss represent only an attempt to avoid Judge Kelly's injunction.

On September 6, 2005, Plaintiff filed a "Motion to Remand or, in the Alternative, for Order to Show Cause Why Defendants Should Not be Held in Contempt . . .," arguing that her Complaint raises only state law issues and should therefore be remanded.  She also argues that Defendants should be held in contempt for their

---

once by Plaintiff, and each time defense counsel has quickly pointed out that Judge Kelly's order was "only" stated orally from the bench but not reduced to writing before Defendants' removal on the day following.  The details underlying Defendants' apparent violation of the state court's order are not relevant to this court's jurisdictional analysis (*see* footnote 4, *supra*). Nonetheless, the court cannot but wonder how gladly Judge Kelly will suffer Defendants' reasoning if in the coming days they continue to assert the same excuse for violation of the injunction.

alleged violation of Judge Kelly's injunction and a receiver should be appointed in light of their purported willful refusal to abide by the state court's order.[4]

On September 7, 2005, Defendants filed a "Supplemental Notice of Removal," in which they give "supplemental notice" that the basis for subject matter jurisdiction is the 15th Amendment of the United States Constitution, and the Voting Rights Act. Specifically, Defendants allege that this lawsuit attempts to place a restriction only upon the City of Detroit, which is predominately an African-American city. Defendants argue that these restrictions violate the Voting Rights Act. 42 U.S.C. §§ 1971 & 1973.

On September 7, 2005, Plaintiff filed a supplemental brief in support of her motion to remand, in response to Defendants' supplemental notice of removal. Plaintiff argues that Defendants have still failed to articulate a basis for subject matter jurisdiction and Plaintiff should be awarded costs and fees.

On September 8, 2005, the court conducted a status conference and discussed, among other things, the court's jurisdictional concerns. As agreed upon by counsel, the court allowed Defendants time to brief the issue of subject matter jurisdiction. Thus, on September 9, 2005, the court issued its "Order to Show Cause," directing Defendants to show cause why this case should not be remanded to Wayne County Circuit Court for lack of subject matter jurisdiction.

---

[4] Plaintiff also argues that Defendants sought removal solely to avoid the implications of Judge Kelly's injunction. The court declines to address this issue because Defendants' reason for removal is irrelevant. *See White v. Wellington*, 627 F.2d 582, 586 (2d Cir. 1980) ("[T]he right to remove is statutory, jurisdictional and absolute, regardless of motivation, when it is found to exist.").

On September 12, 2005, Defendants contemporaneously filed a "Second Supplemental Notice of Removal," and their combined response to the courts "Order to Show Cause" and to Plaintiff's "Motion for Remand . . . ." Defendants assert that subject matter jurisdiction exists over this controversy pursuant to 28 U.S.C. § 1441, the general removal statute, and 28 U.S.C. § 1443, the civil rights removal statute. Further, Defendants again rely on the Voting Rights Act and the 14th and 15th Amendments of the United States Constitution.[5]

The court conducted a hearing on the jurisdictional matter on September 13, 2005. At the hearing, the court allowed both sides time to argue their respective positions and elaborate on any matters which they had raised in their previously filed briefs. At no point did either side request additional time to present further argument or evidence to the court. Nonetheless, on September 14, Defendants filed a "Request to Schedule USC 1446(C)(5) Evidentiary Hearing," arguing that an evidentiary hearing was required under 28 U.S.C. § 1446(c)(5). After Plaintiff filed a response to this motion, Defendants withdrew the motion.[6]

---

[5] Defendants also filed a supplemental response brief on September 13, 2005.

[6] The fact that Defendants' motion was withdrawn immediately after receiving Plaintiff's response suggests to the court that Defendants did not comply with the local rule requiring concurrence before filing motions. See E.D. Mich. LR 7.1(1). Defendants' belated request was facially invalid, and if Defendants had sought concurrence it would have saved the additional time and expense incurred by Plaintiff and this court. The sole basis for Defendants' request was 28 U.S.C. § 1446(c)(5), which by its express terms applies only to the removal of *criminal* prosecutions. Moreover, the additional "evidence" which Defendants sought to submit to the court ("a review of the hearing held in the Circuit Court" and "some focused testimony on the Civil Rights violations being alleged") was both unnecessary and largely duplicative. The

6

## II.  STANDARD

It is axiomatic that federal courts are courts of limited jurisdiction.  The removing defendants bear the burden of establishing federal subject matter jurisdiction.  *See Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-454 (6th Cir. 1996) (citing *Carson v. Dunham,* 121 U.S. 421, 425-26 (1887)).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).  Thus, in cases such as this one where there is no diversity of citizenship, federal-question jurisdiction is required.  *Id.*

Removal statutes should be given strict construction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941) ("'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [the removal] statute has defined.'") (quoting Healy v. Ratta, 292 U.S. 263, 270 (1934)); *see also Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.  1999) ("In interpreting the statutory language, we are mindful that the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction.").  Any doubt should be resolved in favor of remand.  *Brierly*, 184 F.3d at 534.  To that end, the Sixth Circuit has held that "in the interest of comity and

---

court had already received a transcript of the relevant portion of Judge Kelly's ruling, and had heard substantial argument and proffers of proof relating to Defendants' argument regarding the alleged civil rights violation.

federalism, federal jurisdiction should be exercised only when it is clearly established." *Id.*

### III. DISCUSSION

Defendants essentially make two arguments in support of their claim of subject matter jurisdiction. First, they argue that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1441, the general removal statute. Next, they argue that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1443, the civil rights removal statute.

### A. 28 U.S.C. § 1441

Defendants first contend that this case is removable under 28 U.S.C. § 1441(a), which provides, in part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Specifically, Defendants contend that this case "impacts upon the substantive voting rights and civil rights laws. Further, because Plaintiff made specific references to federal voting rights laws in both her complaint and the Motion for Injunctive Relief, it is arguable that the case is one in 'which the district courts of the United States have original jurisdiction.'" (Defs.' Mot. Br. at 4 (emphasis omitted).) The court disagrees.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

8

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 112-13 (1936)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Here, Plaintiff expressly reserved the right to pursue federal claims in a separate action in federal court. (Compl. at ¶ 51.) Mere reference to a federal law or federal right is not, as Defendants argue, enough to confer subject matter jurisdiction in this matter. This is especially true where, as here, the reference was to *exclude* federal claims from the complaint. Indeed, the complaint seeks to assert only rights arising under state statutes against state officials in relation to a state election. It is hard to imagine a more quintessentially state case. *See, generally, Katzenbach v. Morgan* 384 U.S. 641, 647 (1966) (describing the state's interest in its own elections).

The fact that Defendants intend to raise a defense under federal law is also not enough to remove under § 1441. "When determining whether removal is proper, a court may only examine the face of the complaint and cannot rely on an anticipated defense raised by defendants." *Neal v. Wilson*, 920 F.Supp. 976, 983 (E.D. Ark. 1996) (citing *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1 (1983)). In other words, it is Plaintiff's allegations, not Defendants', that determine whether a federal question is presented. *Id.* (citing *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125 (1974)) ("A federal question must be an essential element of the plaintiff's complaint to provide grounds for removal.").

Because Plaintiff's well-pleaded complaint does not depend on the resolution of a substantial issue of federal law, the court finds that Defendants have not met their

burden of establishing the applicability of § 1441. *See Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

### B. 28 U.S.C. § 1443

Defendants next argue that removal is proper under 28 U.S.C. § 1443, which contains special removal provisions in civil rights cases. Specifically, § 1443 provides:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443. Defendants contend that they are entitled to remove this case under both subsections of §1443.

### 1. 28 U.S.C. § 1443(1)

Defendants have not persuaded the court that §1443(1) is applicable to this case. Even assuming that Defendants can constitute a "person" for purposes of § 1443(1), it is not clear to the court what "right" that Defendants claim they are being

denied. Defendants argue generally that "Defendant Currie has been denied the right to act pursuant to Federal Law," (Def.'s 9/12/05 Resp. Br. at 7), but the "right to act pursuant to Federal Law" is not a right contemplated by § 1443(1).

Instead, § 1443(1) applies only when Defendants can demonstrate two factors. First, Defendants must show "(1) that the right allegedly denied the removal Petitioner arises under federal law providing for specific 'civil rights stated in terms of racial equality;' and (2) that the removal Petitioner is denied or cannot enforce specified federal rights in state courts." *McQueary v. Jefferson County,* No. 86-5505, 1987 WL 37567, *2 (6th Cir. June 2, 1987) (quoting *Johnson v. Mississippi,* 421 U.S. 213, 219 (1975). Indeed, the cases to which Defendants cite expressly hold that the removing defendants must establish that they are being denied a right based on racial equality. *See Pennsylvania ex rel. Rothenberg v. Beers* 450 F.2d 783, 784 (3rd Cir. 1971) (affirming remand where defendant's 14th Amendment gender-based argument did "not, and could not, allege a denial of equal rights based on race"); *see also Georgia v. Rachel*, 384 U.S. 780, 792 (1966) ("[T]he defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands."). Here, Defendants have made no showing--nor, indeed, any allegation--that they themselves have been denied a "specific civil right stated in terms of racial equality." At most, Defendants have alleged that Judge Kelly's order will force them to *deny to others* their civil rights.

11

Defendants have not offered any support that they may vicariously assert the civil rights of others under § 1443(1).  Instead, such claims are properly analyzed under § 1443(2).

### 2.  28 U.S.C. § 1443(2)

Defendants also seek removal under § 1443(2), which provides a basis for removal "[f]or any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*"  28 U.S.C. § 1443(2) (emphasis added).  The first clause of this subsection confers the right of removal only upon federal officers.  *Greenwood v. Peacock*, 384 U.S. 808, 824 (1966).  The second clause of this subsection, however, is available only to state officers.  *Id.* at 824 n.22.  This clause, known as the "refusal clause," was "intended to enable State officers, who shall refuse to enforce State laws discriminating . . . on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws."  *Id.*  (quoting legislative history of 28 U.S.C. § 1443(2)).

Although there is not an abundance of law addressing § 1443(2), courts interpreting this statute have held that it may be invoked "when removing defendants make a colorable claim that they are being sued for acting 'pursuant to a state law which, though facially neutral, would produce or perpetuate a racially discriminatory result as applied.'"  *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980); *see also Greenberg v. Veteran*, 889 F.2d 418, 421 (2d Cir. 1989) (same).  To that end, § 1443 requires "a colorable conflict between state and federal law leading to the removing

defendant's refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law." *Id.* (quotations omitted); *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir 1995) (same); *see also Brown v. Florida*, 208 F.Supp. 2d 1344, 1350 (S.D. Fla. 2002) (requiring a "colorable conflict between state and federal law"). The "good faith belief" is to be tested objectively; defendants cannot simply assert an unsupportable subjective belief that they are being asked to violate federal law. *White*, 627 F.2d at 587.

In this case, the court cannot find that Defendants have "a good faith belief" that they are being forced to violate federal civil rights laws. This is not a situation, for example, where Defendants are being placed "in the intolerable position of having to choose which of the conflicting court orders to follow in upholding its residents' civil rights." *See Alonzo*, 68 F.3d at 946 (internal quotations omitted). Instead, Defendants make the strained argument that Judge Kelly's injunction, applied only to the City of Detroit and its largely African-American population, will force Defendants to violate the Voting Rights Act. Defendants argue that Judge Kelly's injunction impermissibly restrains the right to vote enjoyed by African-American, elderly and handicapped voters. The sole basis for this argument is that Detroit voters will now have to request their own applications for absentee ballots, rather than receive unsolicited applications from the Clerk. Defendants assert that voters in other cities do not have to do this, and thus Judge Kelly's injunction violates federal law.

This argument simply does not present a "colorable conflict" sufficient to justify removal. *See Alonzo*, 68 F.3d at 946. ("If no colorable conflict between state and

federal law exists then removal is improper."). First, Judge Kelly's order in no way restricts the right to vote of any citizen–whether African-American, Caucasion, elderly, handicapped or otherwise. The injunction merely requires Defendants to abide by MCL 168.759. Any eligible person seeking to vote by absentee ballot in Detroit may still do so by requesting and completing an application for an absentee ballot. Second, and more importantly, even if Judge Kelly's order somehow affected an individual's right to vote, it in no way accomplishes the discriminatory result necessary to invoke § 1443(2). The court rejects Defendants' argument that the order invidiously discriminates against the City of Detroit, which has a predominately African-American population. That the injunction only applies to the city of Detroit is not remarkable, in that only City of Detroit officers are involved in this lawsuit. Under Defendants' argument, any time a state court ruled relative to voting procedures affecting Detroit litigants it would necessarily implicate the Voting Rights Act. This result is not only illogical,[7] but it also raises serious *Rooker-Feldman* concerns.[8]

---

[7] Defendants' contention that only the City of Detroit will be bound by Judge Kelly's ruling is simply not correct. Assuming Judge Kelly's preliminary injunction ripens into a permanent injunction (which at this point is still just a speculative assumption), her finding that mailing unsolicited absentee ballot applications violates a Michigan statute of general application will necessarily affect all Michigan elections. If Judge Kelly's order is litigated through the appellate system, the Michigan court's will address the interpretation of Michigan law, specifically as to this action but generally as to all elections. Whether Judge Kelly's order is affirmed or reversed, it will become binding on all Michigan cities under the doctrine of precedent. Indeed, even if Judge Kelly's order were not appealed, it is nonetheless of precedential value to all Michigan cities.

[8] Under the *Rooker-Feldman* doctrine, inferior federal courts lack authority to perform appellate review of state court decisions. *See, e.g.*, *Hart v. Comerica Bank*, 957 F. Supp. 958, 968-70 (E.D. Mich. 1997) (describing the *Rooker-Feldman* Doctrine). Under Defendants' argument, whenever a state court judge issued an order which would arguably affect the civil rights of a city with a predominately minority population,

It is not sufficient to invoke § 1443 by asserting a general reliance on the Voting Rights Act; Defendants must show how that reliance is objectively reasonable. *See Sexson v. Servaas*, 33 F.3d 799, 803 (7th Cir. 1994). Here, Defendants' subjective belief that Judge Kelly's order forces them to violate federal law is objectively unreasonable. *See News-Texan, Inc. v. City of Garland, Tex*,. 814 F.2d 216, 219 (5th Cir. 1987) (holding that the defendant's interpretation of Voting Rights Act could not justify federal subject matter jurisdiction for purposes of § 1443(2)). As one court has held, a "vaguely defined claim" that a state official's actions would "be 'inconsistent with' the equal protection clause" is not enough to allow removal under § 1443(2). *Dodd v. Rue*, 478 F. Supp. 975, 979 (S.D. Ohio 1979) ("We think defendant's apprehension, however well intentioned or subjectively felt, is an insufficient substitute for an expressly claimed, direct and immediate clash of opposing duties." (quotation omitted)); *see also Stephenson*, 180 F. Supp. 2d at 785 (finding allegation that defendants were being forced to act "inconsistent with or in violation of the Voting Rights Act and the equal protection principles of the Constitution of the United States" insufficient to invoke § 1443(2) where the defendants reliance on the refusal clause was "speculative").

Defendants cannot create an issue of federal law by making an unsupportable invocation of § 1443. Here, there is no direct or immediate clash of duties between federal and state law. The court is aware of no federal law which requires the unsolicited mailing of absentee ballots which Defendants seek to accomplish.

---

the action would become immediately removable to federal court, essentially to appeal that state court's ruling. The proper course of action, however, is to challenge the state court's decision within the state court appellate system.

Presumably, Defendants seek to remove in order to ask this court to find that Judge Kelly's order was in error and that they are justified in refusing to obey it. Such a goal, however, does not properly utilize the protections of § 1443. *See Stephenson*, 180 F. Supp. 2d at 785 ("[I]t is not entirely clear what the defendants refuse to do, except fail to comply with state constitutional mandates."); *see also Greenberg,* 889 F.2d at 421 ("The purpose of the 'refusal clause' is to provide a federal forum for suits against state officers who uphold equal protection in the face of strong public disapproval."). The court will not allow Defendants to take haven in federal court under the guise of providing equal protection for the citizens of Detroit but with a goal of perpetuating their violation of a non-discriminatory state law.

Moreover, underlying the court's analysis of § 1443(2) is the rule that "removal statutes are to be strictly construed against removal, with any doubt in a particular case to be resolved against removal." *Stephenson v. Bartlett*, 180 F. Supp. 2d 779, 784 (E.D.N.C. 2001) (quoting *Storr Office Supply v. Radar Bus. Sys.*, 832 F.Supp. 154 (E.D.N.C. 1993). "This strict construction is required because divesting the state courts of power to hear claims raising important state matters raises significant federalism concerns." *Id.* at 784-785.

The Sixth Circuit has held that § 1443(2) "was designed to protect state officers from being penalized for failing to enforce discriminatory state laws or policies by providing a federal forum in which to litigate these issues." *Detroit Police Lieutenants and Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979). These concerns are not implicated here. Judge Kelly's injunction, which requires only that the

City of Detroit abide by state law, does not implicate any "law providing for equal rights."

*See* 28 U.S.C. § 1443(2).   As the *Stephenson* court found:

> Plaintiffs' complaint only raises issues of state law. It is defendants' defense under the Voting Rights Act, namely that they cannot comply with the state constitution because of its effect on the voting rights of specified constituent groups, that arguably raises a federal issue. As the Supreme Court has made clear, however, defendants "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). To allow removal in this case would give defendants the power to select the forum in which the claim is litigated.

*Stephenson*, 180 F. Supp. 2d at 786.   The court finds this reasoning directly applicable to the facts of the instant case.  Removal is not allowed under § 1443(2).

Defendants have failed to identify any valid basis for subject matter jurisdiction over this state law controversy, and the court will remand this action to state court.

### IV.  CONCLUSION

IT IS ORDERED that Plaintiff's motion to remand [Dkt # 3] is GRANTED, and this case is REMANDED to Wayne County Circuit Court for lack of subject matter jurisdiction.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  September 14, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 14, 2005, by electronic and/or ordinary mail.

 S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522