UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN D. TAYLOR,

    Plaintiff,

v.

                              Case No. 05-CV-73418-DT

JACKIE CURRIE et al.,

    Defendants.
                                /

**ORDER IMPOSING SANCTIONS AND
GRANTING PLAINTIFF'S APPLICATION FOR ATTORNEY FEES AND COSTS**

**I. INTRODUCTION**

    This case was removed from Wayne County Circuit Court on September 2, 2005, by Defendants Jackie Currie, Clerk of the City of Detroit, and the Detroit Elections Commission. It was remanded twelve days later when, on September 14, 2005, the court granted Plaintiff Maureen Taylor's remand motion due to lack of subject matter jurisdiction. (9/14/05 Order.) Simultaneously, the court ordered Defendant's counsel, Steven Reifman, to show cause why sanctions should not be imposed against him for improper removal pursuant to 28 U.S.C. § 1447(c) which grants the district court discretion to "require payment of just costs and any actual expenses, including attorney fees incurred as a result of the removal." Specifically, the court noted that it was inclined to believe that sanctions were appropriate because it appeared to the court that: (1) defense counsel did not have authority to remove on behalf of the Detroit Elections Commission and (2) defense counsel otherwise needlessly and unreasonably

multiplied the proceedings and increased the costs of litigation. (9/14/05 "Order to Show Cause" at 2.)  On September 26, 2005, Plaintiff also filed a motion for attorney fees and costs.

## II.  BACKGROUND

The circumstances of the removal to this court have been more completely documented in earlier opinions of the court, but will be additionally summarized herein.

On Tuesday, August 29, 2005, Chief Judge Mary Beth Kelly of the Wayne County Circuit Court granted Plaintiff's motion for a temporary restraining order and, from the bench on Thursday, September 1, 2005, granted Plaintiff's motion for preliminary injunction.  Judge Kelly opined that Plaintiff was likely to succeed on the merits of the claim that Defendants' actions in mailing absentee ballot applications to recipients who had not solicited them was in violation of Michigan law. (MCL 168.759; *See* 9/2/05 Tr. at 7-8, 11-12.)

The judge enjoined "the City of Detroit from using a bulk mailing and from allowing the unsolicited mailing of absentee voter ballot applications in the general election." (*See* 9/2/05 Tr. at 12, attached to Pl.'s Br. In Opp. to Mot. to Dismiss).  A written iteration of this ruling, to be agreed by the parties as to its form, was required to be submitted no later than 2:00 p.m. on the following Tuesday (a Monday holiday, Labor Day, intervened) (*Id.* at 13), but on the day following the ruling--Friday September 2, 2005--Defendant Currie, purportedly joined by Defendant Elections Commission, removed the case to this court alleging federal question jurisdiction under the 14th Amendment of the United States Constitution and the Voting Rights Act of 1965 (42 U.S.C. § 1973).  (Notice of Removal at ¶ 5.)  The removal notice was signed by

2

Attorney Steven W. Reifman, who affirmatively identified himself as counsel for both Defendant Currie and Defendant Elections Commission.[1]

On September 6, 2005, Plaintiff filed a "Motion to Remand or, in the Alternative, for Order to Show Cause Why Defendants Should Not be Held in Contempt . . .," arguing that her Complaint raised only state law issues. She argued that Defendants should be held in contempt for their violation of Judge Kelly's injunction and that a receiver should be appointed in light of what Plaintiff purported to be a willful refusal to abide by the state court's order.  In this and other later pleadings, Plaintiff argued that Defendants failed to articulate any understandable basis for subject matter jurisdiction and that Plaintiff should be awarded costs and fees.  Plaintiff also argued that attorney Reifman had entered the case to represent Defendant Currie without the imprimatur of the Detroit City Council as required in the city charter, and that there was no authority for his engagement to represent Defendant Elections Commission.  In a supplement, filed on September 7, 2005, Plaintiff raised the issue of sanctions under 28 U.S.C. § 1447(c), Rule 11 or the inherent power of the court.

As early as an in-chambers scheduling conference held on September 8, 2005, this court discussed with all counsel the court's jurisdictional concerns, and allowed Defendants time to brief the issue of subject matter jurisdiction.  This was formalized on

---

[1] The procedures which defendants must follow to remove a case to federal court are set forth in 28 U.S.C. § 1446.  Under that section, each defendant must file, or join in, the notice of removal within thirty days after each received its copy of the initial complaint.  This provision has been interpreted to require that defendants unanimously consent to removal.  See *Knickerbocker v. Chrysler Corp.*, 728 F. Supp. 460, 461 (E.D. Mich. 1990).  Defendants' removal notice was signed on behalf of both served defendants, nominally satisfying the requirements of § 1446.

3

September 9, 2005, when the court issued its "Order to Show Cause" directing Defendants to demonstrate why the case should not be remanded for lack of subject matter jurisdiction.

On September 12, 2005, Defendants contemporaneously filed a "Second Supplemental Notice of Removal," and their combined response to the courts "Order to Show Cause" and to Plaintiff's "Motion for Remand . . . ." Defendants asserted that subject matter jurisdiction existed over that case pursuant to 28 U.S.C. § 1441, the general removal statute, and 28 U.S.C. § 1443, the civil rights removal statute. Defendants again relied on the Voting Rights Act and the 14th and 15th Amendments of the United States Constitution.

The court conducted a hearing on the jurisdictional matter on September 13, 2005. At the commencement of the hearing, Mr. Reifman presented to the court a "stipulation of substitution" that purported to substitute himself and attorney Gene A. Faber in the place of the City Law Department counsel for Defendant Detroit Elections Commission "for purposes of the September 13, 2005 hearing only." (9/13/05 Stipulation at 2.)

At no point in the hearing did either side request additional time to present further argument or evidence to the court, but on September 14, Defendants filed a motion entitled "Request to Schedule U.S.C. 1446(C)(5) Evidentiary Hearing," arguing that an evidentiary hearing was required under 28 U.S.C. § 1446(c)(5). After Plaintiff filed a response to this motion, pointing out that the provision dealt with only criminal allegations, Defendants withdrew the motion. According to Plaintiff's counsel,

4

Defendants did not seek concurrence before filing this facially improper motion. (*See* 9/26/05 Wasinger Decl. at ¶ 7.)

On September 14, 2005, the court ordered that it did not have subject matter jurisdiction over this matter and remanded the case to Wayne County Circuit Court. The only remaining issue before the court is whether to impose sanctions against Defendants and/or Defense counsel.

### III.  STANDARD

First, when a case has been ordered remanded to state court, 28 U.S.C. § 1447(c) grants the district court discretion to "require payment of just costs and any actual expenses, including attorney fees incurred as a result of the removal."  A district court need not find that the notice of removal was supported by an improper purpose to award costs and fees under § 1447(c).  *Morris v. Bridgestone/Firestone Inc.*, 985 F.2d 238, 240 (6th Cir. 1992).

Second, Federal Rule of Civil Procedure 11 allows the court to assess sanctions against attorneys for, among other things, making misrepresentations to the court and needlessly increasing the cost of litigation.  *See* Fed. R. Civ. P. 11(b) & (c).

Third, expenses may be awarded under 28 U.S.C. § 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*

The court retains continuing jurisdiction over the motion for sanctions, despite a remand to state court.  *See Willy v. Coastal Corp.,* 503 U.S. 131, 137-138 (1992); *see*

*also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395-96 (1990) (federal court may consider collateral issues such as sanctions after matter is no longer pending).[2]

## IV. DISCUSSION

### A. 28 U.S.C. § 1447(c)

Section 1447 provides in pertinent part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal....

28 U.S.C. § 1447(c).

A finding of ill-motivation, improper purpose or bad faith is not necessary to support an award under § 1447(c). *Morris v. Bridgestone/Firestone Inc.,* 985 F.2d 238, 240 (6th Cir.1993). Instead, district courts have "a great deal of discretion" to determine whether to award costs and fees, and an award will be affirmed if it was "fair and equitable under all the circumstances." *Id.* (citing *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 923-24 (2d Cir.1992)); *see also Moore v. Permanente Medical Group, Inc,* 981 F.2d 443, 446 (9th Cir. 1992) ("Congress has unambiguously left the award of fees to the discretion of the district court.").

Here, the court has determined that Defendants did not have an arguable basis for removal, Plaintiff's well-pleaded complaint having stated exclusively state law

---

[2] The court thus rejects defense counsel's argument that no court action with respect to sanctions should proceed because counsel is "unclear as to the continued jurisdiction of this court." (*See* 10/12/05 Supp. Resp. Br. at 2.)

claims.[3]  The court also finds that, even though improper purpose is not necessary to support such an award, improper purpose is evident in the removal of this case.

Defendants were ordered by Chief Judge Kelly, in open court and in plain terms, to not mail unsolicited applications for absentee ballots.  Defendant Currie was personally present at the time the order was announced,[4] represented by Michael Krawoski, among other attorneys of the Detroit City Law Department.  Plaintiff's counsel learned the next day that the order had apparently been violated, called Mr. Krawoski, and was told that Mr. Reifman had been retained by Ms. Currie and the Detroit Election Commission.  When counsel called Mr. Reifman, he confirmed that statement. When asked how he could be retained by the Detroit Election Commission, Mr. Reifman "asserted that Ms. Currie was the chairman of the Election Commission and she could

---

[3] Indeed, having been put on notice that the original notice asserted jurisdictional bases that were unsupported by existing law, Defendants maintained their tenuous position by opposing Plaintiffs' motion to remand and two supplemental notices, each of which was similarly lacking in a jurisdictional basis.  The fact that Defendants relentlessly pursued a spurious theory of jurisdiction is a further bases to assess sanctions.

[4] Defendant Currie was present on August 30th 2005, at the court proceeding in which the oral order was pronounced. (9/28/05 Tr. at 13, attached to Pl.'s 10/5/05 Resp. As Ex. A.)  When later asked whether she had been present, Currie testified, under oath, "I don't remember that." (*Id.* at 6.)  Another person present was cautioned by the judge to avoid coaching Currie while she testified, and Attorney Reifman drew admonitions from the judge for repeatedly interrupted the proceedings attempting to assert a Fifth Amendment privilege relative to innocuous questions.  Finally, Defendant Currie was specifically cautioned by Judge Kelly that repeated, frivolous assertions of a "lack of knowledge" such as those offered by her can constitute perjury.  (*Id.* at 7.) Having read the transcript of proceedings, the court must agree that Currie's testimony in response to those questions appears to be patently and knowingly false.  Actions such as these (Ms. Currie and her counsel's deceptive and contemptuous behavior in relation to Judge Kelly and her orders), borne out in the transcript of official court proceedings, give additional weight to the court's conclusion of bad faith and improper motive in the filing of the removal notice.

hire and fire counsel as she chose." (*See* 9/6/05 Pl. Br., Dkt. # 3, p. 4]. Mr. Reifman continues to claim that the right to select one's own counsel is "axiomatic," (*see* 10/12/05 Pl.'s Supp. Resp. at p. 2, Dkt. # 28). Defendant Currie, however, appears to have brought on attorney Reifman, engaging him to represent both defendants, under circumstances and with hiring authority that are both, in fact, quite unclear.

Further, based upon the "substitution" that Mr. Reifman presented at the hearing on September 13, 2005, it seems clear that Mr. Reifman, before that day, had no basis to sign as counsel on behalf of Detroit Elections Commission. Therefore, when he filed the September 2, 2005 "Notice of Removal," signing on behalf of Defendant Elections Commission, he was acting in the absence of actual authority. For this additional reason, the notice of removal was defective and amplifies the court's determination that it was done in bad faith.

Finally, it is clear that Defendant Currie violated the express terms of the state-court injunction announced the day before her notice of removal was filed. She was convicted of criminal contempt of court, fined and sanctioned in the form of court-imposed monitoring of the election process. (*See* 9/28/05 Tr. & 9/29/05 Tr., attached to Pl.'s 10/5/05 Resp. as Exs. A & B).

The court finds that the engagement and participation of Mr. Reifman in Currie's criminally contemptuous behavior was virtually essential to its success. The improper notice of removal bought time and cover for the mailing that had been forbidden. Further, Mr. Reifman used the removal of this action as a way to argue that the September 1, 2005 oral ruling had not yet been memorialized in writing and was therefore not an "order."

The court, in its discretion, finds that an award of attorney fees is appropriate. The court reiterates that while a finding of bad faith or improper purpose is not required, the court is convinced that both bad faith and improper purpose exist in this case. Before making an award under § 1447(c), the court must determine the amount of costs actually incurred by Plaintiffs, and whether the amount is reasonable. *See Bucary v. Rothrock,* 883 F.2d 447, 448 (6th Cir.1989). This aspect of the decision will be dealt with below.

### B.  Federal Rule of Civil Procedure 11(b) & (c)

Rule 11 provides in pertinent part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record. . . . By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

In *Jackson v Law Firm of O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1229 (6th Cir. 1989), the Sixth Circuit detailed an attorney's obligations under Rule 11:

> Rule 11 imposes three obligations on the signing attorney. First, the attorney must conduct a reasonable inquiry to determine that the document is well grounded in fact. Second, the attorney must conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as good faith arguments for extension or modification of existing law. Third, the document must not be filed for any improper purpose.

*Id.* The court further held that "The focus of Rule 11 . . . is narrow; it relates to a specific act--the signing, and to a specific time--the time of signing." Jackson, 875 F.2d at 1229.

"The court judges the attorney's conduct by 'an objective standard of reasonableness under the circumstances.' " *Id.* (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.,* 815 F.2d 391, 401 (6th Cir. 1987)). "[A]n attorney's good faith is not a defense." *Id.*

In this case it is clear to the court that Defendants' attorney did not conduct a reasonable inquiry to determine either that the removal was well-grounded in fact or warranted by existing law or good faith arguments for extension or modification of existing law.[5] This finding is supported by Defendants' evolving theories of removal, found in their three notices of removal. (*See* 9/02/05 "Notice of Removal;" 9/0705 "Supplemental Notice of Removal; 9/12/05 "Second Supplemental Notice of Removal.") Indeed, counsel did not even obtain the requisite authority to file the original removal on behalf of the Detroit Elections Commission. Instead, the court finds that defense counsel rushed to file the notice of removal in order to validate or even effectuate his

---

[5]Defendants contended that 28 U.S.C. § 1441(a) was implicated by the complaint because the complaint "impacts [sic] upon the substantive voting rights and civil rights laws." Defendants further justified removal stating that "because Plaintiff made specific references to federal voting rights laws in both her complaint and the Motion for Injunctive Relief, it is arguable that the case is one in 'which the district courts of the United States have original jurisdiction.'" (9/12/05 Defs.' Resp. Br. at 4 (emphasis omitted).)

This court disagreed utterly with those contentions because "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 112-13 (1936)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*

The court also found Defendants' later reliance on the Voting Rights Act and 28 U.S.C. § 1443 to be illogical and, indeed, spurious. (*See* 9/14/05 Order.)

10

client's violation of Judge Kelly's September 1, 2005 ruling. By signing the notice of removal, defense counsel was using both the notice itself and this court as a means to delay or avoid the implications of Judge Kelly's rulings.

The court therefore finds that sanctions under the authority of Rule 11 are appropriate. The court will not, however, duplicate or multiply the sanctions so as to impose multiple penalties.

### C. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney or other person ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A finding of bad faith is not required. *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986). The court may decide to not award sanctions under § 1927 to avoid providing an award that "would be duplicative of relief to which [defendants] may be entitled under Fed. R. Civ. P. 11." *Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 375 (6th Cir. 1996). An award under § 1927 is discretionary under the statute. *Id.*

"[W]hen an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Jones*, 789 F.2d at 1232. Additionally, "the application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'"

11

*Holmes v. City of Massillon,* 78 F.3d 1041, 1049 (6th Cir. 1996) (quoting *In re Ruben,* 825 F.2d 977, 984 (6th Cir.1987)). The Sixth Circuit has held that "the standard for section 1927 determinations in this circuit is an objective one, entirely different from determinations under the bad faith rule." *In re Ruben,* 825 F.2d at 984. However, "simple inadvertence or negligence" is not enough to support a section 1927 sanction. *Id.*

Here, Mr. Reifman without question multiplied the proceedings by persisting in the face of clearly-stated cautions from opposing counsel and the court that federal jurisdiction was wanting. Multiple amended and restated removal petitions were presented by him and evolving theories on how federal jurisdiction might be found were argued, all without avail. The court also finds, based upon the facts noted above, that the multiplication of proceedings was objectively vexatious and Mr. Reifman's actions fell far "short of the obligations owed by a member of the bar to the court." *See Holmes,* 78 F.3d at 1049. The court finds, in addition, and although it is not necessary to a § 1927 determination, that the pursuit of litigation in this court by Mr. Reifman was done in bad faith.

It is the court's conclusion here, as it was above, that Mr. Reifman was attempting to obstruct the jurisdiction and functions of the state court in which this litigation had been properly commenced. A clearly-stated injunction from the bench was ignored during the time acquired by a groundless removal to this court.[6]

---

[6] While not directly relevant to the inquiry before the court, the court adds that deceptive testimony was offered under oath with the apparent assistance of Mr. Refiman once the case was reinstated in the proper jurisdiction.

## V.  FEES AND EXPENSES

In an affidavit filed with the court, Attorney Hugh Davis avers that he has accumulated "fees for the time spent on this matter in Federal Court" amounting to $15,000, consisting of 40 hours. Davis avers that he has "deducted 8.4 hours from my time between September 2, 2005 and the Court's order of remand which were devoted to efforts which will be of use in the state proceedings," and that "the incidental expense in telephone, facsimile, copying, etc. is insufficient to justify calculation." He avers that his hourly rate is $375.00 for the purpose of fee petitions and for those clients that can afford to pay for his services.

In his declaration, also submitted under oath, attorney Stephen Wasinger avers that his hourly rate is $375, and that he has accumulated 53 hours of billable time in pursuit of the successful remand of this case, amounting to $19,375. He further avers, with citations to the docket, that he repeatedly requested of Defendants to agree to remand the case, pointing out to them the fruitlessness of their changing removal jurisdiction arguments.

While the court is inclined to find that these amounts are reasonable, based on the number of filings necessitated by Mr. Reifman's conduct, the court will order counsel to submit a more particularized accounting of their time.

Additionally, the court will decline to award sanctions against Ms. Currie.  The court's analysis has been primarily focused on Mr. Reifman's conduct in the signing and maintenance of a suit which was not appropriately grounded in law, pursued without the requisite authority of the Detroit Elections Commission, and used to pursue an improper purpose in violation of Mr. Reifman's ethical obligations as a member of the bar.  While

Ms. Currie is certainly not without fault, her conduct is more appropriately addressed in state court.[7]

## VI.  CONCLUSION

For the reasons stated above, the court finds that Attorney Steven Reifman has failed to adequately respond to the court's September 14, 2005 "Order to Show Cause," and will therefore assess sanctions against Mr. Reifman in an amount to be determined. The court finds that sanctions are warranted under 28 U.S.C. § 1447(c)  Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927.

IT IS FURTHER ORDERED that Plaintiff's "Application for Attorneys Fees" [Dkt. # 23] is GRANTED.

The court, however, declines to award duplicative sanctions.  Instead, the court will make one award of sanctions, based on actual hours expended by both Attorney Hugh Davis and Attorney Stephen Wasinger.  To that end, Attorneys Davis and Wasinger are DIRECTED to submit a more detailed accounting of their hours expended in this case after and as a result of the "Notice of Removal" filed on September 2, 2005 up until the filing of the October 5, 2005 response to the court's "Order Directing Further Briefing."  The accounting shall be submitted on or before **November 18, 2005.**

  S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

---

[7]In light of the court's finding that Mr. Reifman did not have authority to remove on behalf of the Detroit Elections Commission, sanctions against that entity are similarly unwarranted.

14

Dated:  November 10, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 10, 2005, by electronic and/or ordinary mail.

                                            S/Lisa G. Wagner
                                            Case Manager and Deputy Clerk
                                            (313) 234-5522