UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN D. TAYLOR,

    Plaintiff,

v.                                                    Case No. 05-CV-73418-DT

JACKIE CURRIE et al.,

    Defendants.
                                          /

**ORDER DENYING MOTION FOR RECONSIDERATION**

On November 10, 2005, the court issued an order imposing sanctions against Attorney Steven Reifman in an amount to be determined. After further briefing, the court assessed sanctions in the amount of $41,770. (*See* 12/07/05 Order). Now pending before the court is Mr. Reifman's motion for reconsideration, filed on December 16, 2005. No response or hearing is required on the motion. *See* E.D. Mich. LR 7.1(g). For the reasons stated below, the court will deny the motion.

**I. STANDARD**

Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican,* 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). A motion for

reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.,* 967 F.Supp. 951, 952 (E.D. Mich. 1997).

## II.  DISCUSSION[1]

### A.  Timeliness

As an initial matter, the court notes that portions of Mr. Reifman's motion for reconsideration are untimely. The local rules provide that motions for reconsideration must be filed within 10 days of entry of the challenged order. *See* E.D. Mich. LR 7.1(g)(1). Much of Mr. Reifman's brief is devoted to the court's conclusions in its original November 10, 2005 order, which first assessed sanctions against him. The time for moving for reconsideration of this order has long-since passed. The fact that Mr. Reifman is also challenging the amount of sanctions, as determined in the December 7, 2005 order, does not mean that he is allowed a renewed time period to argue the merits of the initial November 10 order. Thus, the court finds that any of the challenges which relate to the imposition of sanctions, rather than to the final amount of sanctions, are untimely.

### B.  Mr. Reifman's Role in the Violation of Judge Kelly's Order

The bulk of Mr. Reifman's motion addresses the issue of whether he participated in the violation of Judge Kelly's September 1, 2005 order. This challenge is untimely, because it relates to issues found in the court's November 10, 2005 order. Even if the

---

[1] The factual background for this dispute has been set forth adequately in previous orders of the court and will not be restated here.

court were to find that the challenge was timely, however, the court would still deny it as without merit for the reasons discussed below.

Mr. Reifman argues that the "court has assumed that Steven Reifman was involved in having the ruling of Judge Kelley [sic] of the Wayne County circuit court [sic] violated" and that this finding was "not supported by the conclusions of the Special Monitors appointed by Judge Kelly." (Reifman Supp. Br. at 2.) Mr. Reifman further implies that correcting the court's "erroneous" conclusion that he was involved in the violation of the state court order would result in a different resolution of the sanction order. The court disagrees with Mr. Reifman on all points.

First, it bears noting that, contrary to Mr. Reifman's protestations, the court did not actually find that he had participated in the violation of the state court order. On page seven of the court's November 10, 2005 order, the court commented that Mr. Reifman's behavior at a September 28, 2005 hearing was deceptive and contemptuous of Judge Kelly. (11/10/05 Order at 7 n. 4.) The court based this statement on the transcript of the hearing that reflected Mr. Reifman's continued groundless objections and disrespectful behavior. Additionally, on page eight of the court's order, it found that "the engagement and participation of Mr. Reifman in Currie's criminally contemptuous behavior was virtually essential to its success." (*Id.* at 8.) The court deliberately and specifically did not find that his *knowing* participation was essential. Instead, the court focused on the fact that the "improper notice of removal bought time and cover for the mailing that had been forbidden." (*Id.*) This conclusion is not challenged by Mr. Reifman (nor indeed, could it be), since he signed the removal which had the effect of delaying the underlying state proceedings. Further, Mr. Reifman cannot legitimately

3

challenge the court's conclusion that he used the removal of this action as a way to argue that Judge Kelly's oral injunction was not an "order," (*Id.*), inasmuch as he continuously argued as such both on and off the record in this action and the underlying state court action.

Second, even if the court had previously found that Mr. Reifman actively participated in the violation of the state court order and were to now find that conclusion was in error, this would not affect the ultimate decision of the court to sanction Mr. Reifman. In it's November 10, 2005 order, the court held that sanctions were appropriate under 28 U.S.C. § 1447(c), Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927, but specifically declined to award duplicative fees. (11/10/05 Order at 14.) As pointed out in the court's order, a finding of bad faith or improper purpose was not necessary to award fees under 28 U.S.C. § 1447(c) or 28 U.S.C. § 1927. (*Id.* at 9, 12.) Thus, even if the court had found that Mr. Reifman's behavior had been merely incompetent but not in bad faith, sanctions in the same amount would still have been awarded.

Moreover, the court's analysis of bad faith was focused not on his behavior in the underlying suit, but on his behavior in this action, in filing and maintaining a suit which was not well-grounded in the law and in submitting frivolous filings. Mr. Reifman's continued vexatious behavior (indeed, the current motion carries undertones of a similar character) has unnecessarily burdened opposing counsel and this court, irrespective of whether he additionally participated in criminal contempt in the state court matter.

Finally, although the court's original order did not rely on any finding that Mr. Reifman was not personally involved in his client's decision to violate the state court

4

injunction, the court is not convinced that Mr. Reifman has now established that he was not involved. Interestingly, despite the fact that this argument is the cornerstone of his motion for reconsideration, he has attached no affidavit--nor indeed made any assertion--stating that he was not involved in the decision to violate Judge Kelly's September 1 ruling. He makes no averment that he did not counsel Jackie Currie, the Detroit Elections Commission, Gloria Williams (Director of Elections for the City of Detroit),[2] or any other pertinent person, to mail the absentee ballot applications. Instead, Mr. Reifman argues only that this court's "findings are not supported by the conclusions of the Special Monitors appointed by Judge Kelly." It seems to the court that if an attorney wanted to carefully craft arguments in order to avoid an untrue affirmative representation that he was not involved in the decision to violate Judge Kelly's order or to mail out the absentee ballot applications, it would probably look like the present motion. Instead, Mr. Reifman's motion grounds its support in the conclusions of the Special Monitors.

Those conclusions, however, hardly constitute smoking gun "evidence" of his innocence as he claims. The Special Monitors found only that Gloria Williams made the decision to mail the ballot applications "after consultation with staff, City Clerk Jackie Currie and the Law Department." (Report at 23.) The Special Monitors further specifically found that no one associated with the City of Detroit Law Department did anything to authorize or condone such action. (*Id.*) The report, however, does not make any finding with respect to Mr. Reifman's participation in that consultation.

---

[2]*See* Williams Dep. at 4, attached to Reifman Supp. Br.

5

Indeed, it appears to the court that Mr. Reifman prevented the Special Monitors from making any conclusions with respect to him. In the materials submitted by Mr. Reifman was the deposition of Gloria Williams. When Ms. Williams was asked whether she sought Mr. Reifman's advice as to whether to mail the applications, Mr. Reifman objected on the basis of the attorney/client privilege and instructed her not to answer. (Williams 10/21/05 Dep. at 34.) Similarly, when asked whether Mr. Reifman gave her advice as to the mailing, Mr. Reifman again instructed Ms. Williams to not answer on the basis of the attorney/client privilege. (*Id.*) Mr. Reifman also gave this instruction to Ms. Williams when she was asked whether she talked to any of her lawyers about whether to wait until Tuesday to mail the applications. (*Id.* at 35.) In light of Mr. Reifman's continued objections and instruction to Ms. Williams[3] to not answer any questions regarding Mr. Reifman, there is simply no way the Special Monitors would have been able to assess his involvement in the mailing of the ballot applications.[4]

---

[3] The court has read few deposition transcripts more unusual and disjointed. In addition to Mr. Reifman's many attorney-client privilege objections, an observer at the deposition, Leonard Young, identified as both a Baptist minister and an advisor to Defendant Currie, repeatedly interjected with answers, comments, objections and instructions to the witness. Mr. Reifman, in turn, raised an objection to a question about the witness's knowledge of Young's advice concerning the forbidden mailing, basing it on a religious counseling privilege.

[4] At the continued deposition of Ms. Williams, she testified, contrary to her first recollection, that Mr. Reifman was physically present at the conference with Currie and Williams where a discussion was held regarding the removal of the state action to Federal Court. (Williams 10/27/05 Dep. at 8.) Ms. Williams was asked "At the time that Ms. Currie expressed her predilection to remove the case to Federal Court, had the decision to mail out the absentee applications been made?" (*Id.*) Ms. Williams testified she did not "remember the order." (*Id.*)

For all these reasons, the court rejects Mr. Reifman's untimely challenge relating to his participation in the violation of Judge Kelly's injunction. Mr. Reifman has not demonstrated a palpable error by which the court had been misled in its November 10, 2005 order, nor has he demonstrated that correcting this alleged error would result in a different disposition of the sanction issue.

**C. Authority to Remove on Behalf of the Detroit Elections Commission**

Mr. Reifman next challenges the court's November 10, 2005 conclusion that he did not have the authority to file a notice of removal on behalf of the Detroit Elections Commission. (*See* Reifman Mot. at ¶¶ 6-7.) Like his argument relating to his participation in the violation of Judge Kelly's September 1, 2005 order, this challenge is untimely because he did not file it within ten days of the November 10, 2005 order. Even if the court were to consider it timely, however, the court would deny his motion on this issue.

In its November 10 order, the court found that when Mr. Reifman filed the September 2, 2005 "Notice of Removal," he was acting without the actual authority of the Detroit Elections Commission. (11/10/05 Order at 8.) Mr. Reifman argues that this conclusion was erroneous and he submits an affidavit of Jackie Currie which states that she retained Mr. Reifman as her attorney and as the attorney for the Detroit Elections Commission. (Currie Aff. at ¶¶ 2-4.) Ms. Currie states that she retained him in her capacity as the chair of the Detroit Elections Commission and that his retention was "confirmed" at two meetings of the Detroit Elections Commission. (*Id.* at ¶¶ 3-4.) Setting aside the issue of what, exactly, is meant by the nebulous verb "confirmed" (rather than, for example, expressly approved), Ms. Currie's affidavit does not

7

demonstrate a palpable defect which, if corrected, would change the result of the court's November 10 order.

First, this issue goes to whether the litigation was initiated and maintained in "bad faith" which, for the reasons discussed above, was not necessary to the court's decision to sanction Mr. Reifman.

Second, Ms. Currie's current affidavit is consistent with the (albeit unverified) assertions made by Mr. Reifman in his September 21, 2005 response to the court's order to show cause. These assertions were already determined by the court to be insufficient to establish that Mr. Reifman had the requisite authority to represent the Detroit Elections Commission.

Third, the issue of sanctions was first raised by the court in an "Order to Show Cause." (*See* 9/14/05 Order.) It was thus Mr. Reifman's responsibility to satisfy his obligations within the time imposed by that "Order to Show Cause." Not only did he originally fail to adequately brief the details surrounding his retention, including the source of Ms. Currie's authority to independently retain a private attorney, his current motion continues to skirt the central issue. In any event, even if Mr. Reifman could now prove that Ms. Currie had the authority to retain him and in fact exercised that authority in an appropriate manner prior to the filing of the Notice of Removal, the fact remains that he did not *timely* present this information to the court within the deadlines imposed by the court's Order to Show Cause. His motion on this issue is denied.

### D. Method of Calculating Sanctions Amount

The remainder of Mr. Reifman's motion relates to the court's calculation of the final sanctions amount. Because this issue was determined, not in the court's

November 10, 2005 order, but in the December 7, 2005 order, his motion on this issue is timely. It is also, however, without merit and will be denied as such.

First, Mr. Reifman contends that the court should not have increased the potential amount of sanctions from its inclination on November 10 to the final order on December 7. (Reifman Mot. at ¶ 9.) Specifically, he notes that on November 10, the court was "inclined" to find that the attorney fees first sought by Attorneys Davis and Wasinger were reasonable, but that the court later awarded a higher amount after reviewing the detailed billing summaries. Mr. Reifman contends that if the initial amount was reasonable, the subsequent amount cannot also be reasonable. This argument is frivolous. "Reasonable" is not such a definite term that there can only be one "reasonable" amount of attorney fees. Moreover, the later amount included subsequent work which was performed by Attorneys Davis and Wasinger, and thus the higher amount was justified (and reasonable).

Mr. Reifman also challenges the consideration of that additional work, implying that the additional fees were not caused by any action of Mr. Reifman. (*See* Reifman Mot. at ¶ 10.) The court disagrees. None of the fees complained of would have been necessary were it not for the filing of the "Notice of Removal" and the behavior of Mr. Reifman.[5] Mr. Reifman has thus failed to establish a palpable defect in the inclusion of these fees in the court's sanctions award.

---

[5]This includes time spent preparing an application for attorney fees, and responses directed by the court and filings not necessarily directed by the court, but certainly helpful to the court in its analysis. (*See, e.g.,* 9/22/05 Reply). The court notes that Plaintiff's September 22, 2005 reply would not have been necessary if Mr. Reifman had been a good deal more forthright in his September 21, 2005 response to the court's order to show cause.

9

Next, Mr. Reifman challenges the assessment of sanctions based on hours spent by two attorneys. Mr. Reifman cites no authority, and the court has been unable to locate any authority, for the unique proposition that the court may only award fees based on the hours spent by *one* attorney. This argument is intuitively flawed, and obviously impractical as it is common for parties to engage multiple attorneys on one case.[6] The court is therefore not convinced that awarding sanctions based on the time of both Mr. Wasinger and Mr. Davis was a palpable defect.

The court is also not persuaded that the amount of time or hourly rate which the court used to calculated the final amount of sanctions was in error. Mr. Reifman argues that the court should more closely scrutinize the billing summaries and retainer agreement, and conduct further inquiry into the reasonableness of the hourly rate of Mr. Davis and Mr. Wasinger. Mr. Reifman, however, does not set forth a proposed hourly rate which he contends would be reasonable.

The court finds that Mr. Reifman has not shown a palpable defect with the manner in which the fees were calculated in this case. The court recognizes that an award of $41,770 is rather high, particularly for a case which was indeed pending in this court for only twelve days. Nonetheless, to focus only upon the relatively small number of days this case was pending would be misleading because there was a large amount of work done on an emergent issue with fast-approaching deadlines compressed into a short time period. The number of conferences, hearings, motions, briefs and other

---

[6]The court notes that Jackie Currie herself has four attorneys of record in this case: Mr. Reifman, Allen I. Glass, Gene A. Farber, and Breda E. Braceful. Mr. Reifman, of course, has at all times been operating as her lead counsel.

documents filed in this time period would normally span multiple months in a more typically paced case.  As Mr. Reifman himself has admitted, this was due in part to the accelerated pace necessitated by the importance and urgency of the matter.  (10/12/05 Supp. Br. at 5.)  It was Mr. Reifman who filed the groundless "Notice of Removal" in a case which had extremely important and time-sensitive state-law issues.  For the entire time the case was pending in this court, the underlying state court case could not be conducted, and the court moved rapidly to resolve the necessary issues and send the case back to its proper venue.[7]

Further, the court has already closely scrutinized the billing summaries and declarations of Attorneys Davis and Wasinger and determined that the hours and rates submitted were reasonable and necessary.[8]  (*See* 12/07/05 Order at 1-3.)  Mr. Reifman has presented no evidence to contradict these findings and merely argues the court should, essentially, look over the documents again.  A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted.  E.D. Mich. LR 7.1(g)(3).

Additionally, the court notes that prior to the entry of the court's December 7, 2005 order, no objection had been filed by Mr. Reifman regarding any of the declarations or time sheets submitted by Mr. Davis and Mr. Wasinger.  At any time prior

---

[7]Moreover, contrary to the representations of Mr. Reifman, the court's and the parties' focus while the case was pending in this court was always on the issues and circumstances related to the "Notice of Removal."

[8]As a side note, the court acknowledges that the rates of Attorneys Davis and Wasinger are on the high end.  They are, however, not unreasonable or uncommon for attorneys in the Detroit-metro area with the degree of training and experience that they possess and who work on matters such as those involved in this litigation.

to the December 7, 2005 order, either in a response brief or a separate motion, Mr. Reifman could have objected to the hourly rate or the number of hours being asserted. He did not.[9] A motion for reconsideration is not the vehicle by which to assert arguments that could have been raised earlier.

Finally, the court will deny Mr. Reifman's request to extend the time for paying the sanctions for a period of six months, rather than the sixty days originally imposed. Mr. Reifman has given no reason whatsoever for this inordinate time delay in fulfilling his monetary obligation. The court finds that the original sixty day time period was sufficient, and not tolled by the filing and consideration of this motion to reconsider.

### III. CONCLUSION

IT IS ORDERED that Mr. Reifman's "Motion for Reconsideration" [Dkt. # 33] is DENIED.

    S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: December 29, 2005

---

[9] It is of some interest that Mr. Reifman did not object to the calculation of hours until the court issued its December 7, 2005, in which it stressed in no uncertain terms that Mr. Reifman--and not the City of Detroit-- would be responsible for satisfying the sanction amount. (12/07/05 Order at 4.) The court found this language necessary in light of a November 16, 2005 telephone conference around which time it had became known to the court that the parties were attempting to negotiate a settlement of the attorney fee issue in this case and in a companion case (*Williams v. Kelly*, 05-73702) which, the court understood, purported to shift the responsibility for payment to the City of Detroit.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 29, 2005, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522